# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RHEA L. HARPER,

    *Plaintiff,*

vs.

QUAD GRAPHICS, INC.,
*A Foreign Corporation,*

    *Defendant.*

Case No.:   CIV-16-257-M

## COMPLAINT

COMES NOW the PLAINTIFF and for her cause of action against Defendant states as follows:

### PARTIES

1.  Plaintiff, RHEA LASHAWN HARPER, is a 52-year-old, African-American, female, resident of Oklahoma County, Oklahoma, who was employed by Defendant as a "Finishing Tech".

2.  Defendant, QUAD GRAPHICS, INC. is upon information and belief a corporation established under the laws of a state other than Oklahoma, with its principle place outside of Oklahoma, operating magazine warehouses all over the United States including one in Oklahoma County, at 6801 S. Sunnylane Rd., Oklahoma City, and in all weeks of the calendar years of Plaintiff's employment, had 500 or more employees.

### JURISDICTION AND VENUE

3.  This is a cause of action for discrimination in violation Title VII on the basis of Race; Violation of the Americans with Disability Act (ADA AA); Violation of the Fair Labor Standards Act (FLSA); and Oklahoma Anti-Discrimination Act (25 O.S.

§1101, et seq).

4. Jurisdiction over the federal claims is vested pursuant to 29 U.S.C. §626(c), 42 U.S.C. §12117(a), 29 U.S.C. §2617(a)(2) and 28 U.S.C. §1331. The state law claims arise out of the same core of facts and jurisdiction over those claims is provided by 29 U.S.C. §1367(b).

5. All of the actions complained of occurred in Oklahoma County, Oklahoma, and Defendant may be served in that county, wherefore venue is proper in this court under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a charge of discrimination with the EEOC, raising the issues of discrimination based on Race (violation of Title VII) and Disability in violation of the Americans with Disabilities Act as Amended (ADA AA).

7. Plaintiff went to the Oklahoma City office of the Equal Employment Opportunity Commission (EEOC) on the 18th of September 2015, and filed a charge of discrimination a copy of which is attached as "Appendix 1" with a case number was assigned 564-2015-01356.

8. The EEOC has a work share agreement with the Oklahoma Office of Civil Rights Enforcement (OCRE) such that a filing with the EEOC satisfies any requirements under the Oklahoma Anti-Discrimination Act.

9. Plaintiff was issued a "Right to Sue" letter on the 15th of December 2015 a copy of which is attached as "Appendix 2".

10. Plaintiff's right to sue letter as noted above was issued on or about the 15th day of December 2015 and received on or after the 17th of December.

11. This matter was submitted to the United States District Court for the Western District of Oklahoma "new cases" email box (newcases@okwd.uscourt.gov) on the 14th of March 2016, but apparently the email bounced and was not received on that date. A copy of the error notice is attached hereto as Appendix-3.

12. This action is timely filed within ninety (90) days of Plaintiff's receipt of the Right to Sue letter.

## STATEMENT OF FACTS

13. Plaintiff began working for Defendant on the 1st of October 2014 working a part time schedule with a 12-hour shift on each Friday and Saturday, then then seeking and receiving 3-4 additional 12-hour shifts each week being paid $10.50 / hour with overtime for the hours above 40 hours each week.

14. Plaintiff received a good performance evaluation and raise in early Decemer 2014 to $11.50 / hour and at all times relevant hereto, Plaintiff performed her job and met or exceeded job expectations.

15. Plaintiff's duties included either placing stacks of magazines onto pallets or feeding stacks of printed material for insertion into other material, in both cases having to keep up with high speed machines processing as many as 100,000 copies while Plaintiff was to sort the stacks coming off of the machine onto different pallets with only two 20-minute breaks per 12-hour shift.

16. On several occasions Plaintiff was criticized for stepping away from production in order to use the bathroom or otherwise exceed the two 20-minute breaks per 12-hour shift, and Plaintiff in turn complained that it was not reasonable to be allowed such a limited amount of break time.

17. Before assignments were made, with several different machines and operations under one roof, management knew which were more taxing than others, and that some required two or more workers in order to keep up.

18. Plaintiff and other African-American employees had to do more physically demanding work, in less time, i.e. to keep up with faster moving production, with less or no assistance from others, than Caucasian employees.

19. Plaintiff on several occasions had her work sabotaged and/or no assistance from others to do a part of the work, such as moving full or empty pallets to make the workplace safe and to aid in productivity.

20. In part due to pallets being left in the wrong places, and no help from those typically charged with that task, Plaintiff suffered an injury on the 20th of December 2014 arising out of and in the course of her employment, falling backward and striking her head on the concrete floor. Initially taking Ibuprofen 800 and attempting to continue her work, sometime later Plaintiff told Dennis the supervisor that she needed medical care and she went to the Emergency Room.

21. On the following Monday, Plaintiff reported to work and advised that she was still in pain, she was referred to the employer's workers' compensation medical

provider and there she was placed on light duty work restrictions until such time as she was able to recover from her injuries.

22. Defendant's managers told Plaintiff they had <u>no</u> light duty work, while allowing Caucasian employees, who had not been injured while working, to do light duty work.

23. Plaintiff had also requested the opportunity to work 6-hour shifts, but was told there were <u>no</u> 6-hour shifts available, only to see Caucasian employees, who had not been injured while working, being allowed to work 6-hour shifts.

24. Since Defendant's managers would not allow her to work shorter hours or light duty work, in early February 2015, after being off work and with no income for nearly two months, she asked her doctor if he would lift her "light duty" working restriction and she was allowed to return to work.

25. While Plaintiff was ready to and did return to working, she was directed to work on the fastest moving and/or highest output machines which over the course of several weeks back on the job caused her condition to worsen to the point that she was put back on light duty.

26. Plaintiff requested the option to again work two days per week specifically on Saturdays and Sundays, but was told the machines didn't run on Sunday, only to learn that other people were allowed to work on Sundays and to have "no-call, no-show" entered into her records for a Sunday shift that she was not scheduled to work.

27. Plaintiff was also interrogated by the main supervisor "Shawn" and asked

why she was looking elsewhere and not looking him in the eye. She acknowledged that since birth she had one eye that did not track with the other and was humiliated when Shawn attempted to make a joke about her birth defect.

28. Plaintiff was able to meet the essential functions of her job, making her a qualified individual with a real or perceived disability.

29. Plaintiff retained counsel to represent her in her workers' compensation case and again due to the lack of income for over two months and present inability to get authorization for additional medical care and/or shorter shifts or other workplace accommodation(s), Plaintiff was considering a possible compromised settlement of her workers' compensation matter.

30. On or about the 11th of May 2015, the day she was to attend the Workers' Compensation court to enter a Joint Petition, the paperwork that was prepared provided that she would be required to resign her position and agree to a "General Release" waiving any and all other claims including claims of discrimination.

31. Plaintiff did not enter into any such settlement and sought return to work but was advised that she had been removed from the schedule and could not return to work.

### *COUNT I*

**Violation of Title VII (Race)**

*Civil Rights Act of 1964;
as amended by the Civil rights Act of 1991*

Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

32. As an African-American, Plaintiff was discriminated against in the terms and conditions of her employment, being given less favorable assignments, having to do harder work, with less assistance from others for equal or less pay than Caucasian employees.

33. To the extent that Defendant may allege other reasons for discrimination of Plaintiff either through terms and conditions of employment or in connection with her being terminated, any such allegation should be considered evidence of pretext which along with failure to follow established policies should be viewed as evidence of intentional discrimination.

34. Plaintiff seeks declaratory judgment that defendants violated Title VII and award all damages authorized thereunder.

## *COUNT II*

### Violation of ADA AA

Plaintiff incorporates all prior allegations and further alleges that:

35. Plaintiff had one or more substantial and permanent impairments, affecting major life activities which include walking, lifting, reaching, among other things and in addition, there was a record of impairment and she was perceived by management as being disabled.

36. Plaintiff performed the essential functions of her job with no adverse performance reviews or disciplinary action.

37. Plaintiff, had the training, experience, knowledge and ability to meet the

essential functions of her job with or without an accommodation, making her a "qualified individual" pursuant to the ADA.

38. Plaintiff requested accommodation, in the form of shorter shifts, and/or less demanding assignments.

39. Plaintiff is: (1) a disabled person within the meaning of the ADA, or perceived as the same; (2) she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodations; and (3) the employer terminated her employment under the circumstances which give rise to an inference that the termination was based on her disability.

40. Under the ADA, upon a request being made for one or more accommodations, Defendant had a duty to provide an "interactive process" to discuss the requests and during which it would be determined which ones would or would not be provided to the employee.

41. Despite her requests that she be allowed work 6-hour shifts, or on less demanding machines, no interactive process was opened and all requested accommodations were denied.

42. No interactive process was allowed and Plaintiff was not only denied her reasonable accommodation, she was retaliated against for seeking the same.

43. To the extent that Defendant may allege other reasons for Plaintiff's termination, any such allegation should be considered evidence of pretext which along with failure to follow established policies should be viewed as evidence of intentional

discrimination.

44. Plaintiff was given less favorable assignments than employees who were not perceived as being disabled, such as being assigned to work alone where often 2 people would be working due to the speed and/or volume of work to keep up with certain machines or operators.

45. Plaintiff seeks declaratory judgment that defendants violated the ADA and award all damages authorized thereunder.

### *COUNT III*

### Violation of State Law (OADA)

Plaintiff incorporates all prior allegations and further alleges that:

46. In addition to being a violation of Federal Laws, discrimination based on either Race or Disability are contrary to and violations of the Oklahoma Anti-Discrimination Act (OADA).

47. Plaintiff seeks declaratory judgment that defendants violated the OADA and the public policy of the State of Oklahoma as defined therein.

48. Plaintiff seeks damages for violation of the OADA, but only to the extent state law is NOT a duplication of the relevant Federal law or remedies.

49. Plaintiff seeks relief for discrimination on the basis of her race and/or disability.

50. Plaintiff also seeks relief under state law to the extent that "Any other result would condone breach of a duty imposed by law on all employers -- the duty not to

discharge an employee for attempting to correct an illegal or unethical act." Rosenfeld v. Thirteenth Street Corp., 1989 Okla. LEXIS 105 (Okla. 1989) 4 I.E.R. Cas. (BNA) 770.

51. Plaintiff also requests relief under State law, which allows different damages, attorney fees and other remedies which are not authorized by Federal Law. Shirazi v. Childtime Learning Center, Inc., 2009 OK 13, 204 P.3d 75 (Okla. 2009).

## *COUNT IV*

### VIOLATION OF FAIR LABOR STANDARDS ACT

52. Plaintiff incorporates all prior allegations and further alleges that:

53. To the extent that much of the discriminatory actions began AFTER Plaintiff complained about only getting two 20-minute breaks per 12-hour shift or attempted to utilize comp time to which she was entitled, was a violation of the Fair Labor Standards Act (FLSA).

54. Plaintiff seeks declaratory judgment that Defendant violated the FLSA and award all damages authorized thereunder.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendant and all relief as may be appropriate, including, but not limited to actual damages, including lost wages, liquidated damages and front pay, and other benefits from working, non-economic damages, punitive damages, where authorized by law, pre and post judgment interest, attorney fees, costs and any other different or additional relief as may be just through law or equity.

Respectfully submitted,

WAGNER & WAGNER, P.C.
4401 N. Classen Blvd., Suite 100
Oklahoma City, OK 73118-5038
(405) 521-9499, (Fax) 521-8994
(e-mail) rjw@wagnerfirm.com


*s/ Robert J. Wagner*

By:_____
ROBERT J. WAGNER, OBA #016902
ATTORNEY FOR PLAINTIFF